[Civ. No. 17032. First Dist., Div. Two. Mar. 7, 1957.]

Estate of LILLIAN INMAN, Deceased. E. P. INMAN, Appellant, v. F. M. GRUNDY et al., Respondents.

*Assigned by Chairman of Judicial Council.

Richard F. McCarthy for Appellant.

Brown & Smith and Jacqueline Taber for Respondents.

THE COURT.—This is an appeal from a decree determining heirship. Lillian Inman died intestate and without issue on July 30, 1954, leaving surviving her and entitled to succession her husband, one brother and two sisters. It was the position of the brother and sisters that all the estate was the separate property of decedent and that each of them under section 223 of the Probate Code was entitled to one-sixth, and the husband to one-half of it all, whereas it was the position of the husband that all the estate, with the exception of a piece of real property at 6233 Leona Street in Oakland, hereinafter called the Leona Street property, acquired by decedent before her marriage, was community property to which he alone was entitled. With respect to the Leona Street property he claimed over and above his undivided one-half portion a lien for the reimbursement of $4,000 allegedly expended by him from community funds in the investment and improvement of said property. The court recognized the one-sixth interest of the brother and each sister in all the

estate except the furniture and furnishings contained in the inventory, as to which the sole ownership of the husband was recognized and did not grant the husband the lien for reimbursement claimed with respect to the Leona Street property. The husband appeals.

The items still disputed on appeal are the following:

(a) A diamond ring, appraised at $175, which the mother of the husband had left to him at her death.

(b) A 1940 LaSalle automobile appraised at $120, registered in the name of Lillian Grundy, decedent's maiden name, when they bought it in 1940.

(c) A piece of real property at 240 MacArthur Boulevard in Oakland appraised at $18,500, acquired in 1942 by a deed from the former owners to Lillian Grundy Inman, a married woman, as her separate property, with a statement in the body of the deed that Mr. Inman joins in the deed in order that it may be her separate property. It will herein further be referred to as the MacArthur property.

(d) Seven United States Savings Bonds, Series G, in the amount of $1,000 each, appraised at $7,000, stipulated to have all been purchased on May 24, 1947, in the name of Mrs. Lillian Grundy Inman.

(e) The claimed lien of $4,000 on the Leona Street property, which property was appraised at $6,000.

The only witnesses at the trial were the husband and Mr. Read, a public accountant, who prepared the income tax returns of the spouses in accordance with data provided by decedent. Many exhibits were received into evidence. In general, the husband testified that they did not divide their property, each maintaining his or her separate property, but they were supposed to be partners, he furnishing all the property and she attending to the business. It is appellant's contention that said allegedly uncontradicted evidence proves that they intended all their property to be community property. ██ However, a partnership agreement between spouses does not have the effect of changing property contributed by a partner into community property. During the existence of the partnership the property will be subject to the special rules as to partnership property (see 20 Cal.Jur. 716 et seq.) which differ from those governing community property. ██ After termination of the partnership (e.g. by death of one of the spouses) the property contributed will in the absence of special agreement revert to its former condition. Moreover, there is other evidence and circumstances in

the case which would justify the trial court in disbelieving the husband's above statements. His testimony and the exhibits showed in part that the source of the assets of the spouses was mainly a 209-acre ranch in Livermore, given to him by his mother in 1925 prior to his marriage. His operation of the ranch was generally not successful and money for living expenses and further real property operations was mainly obtained by encumbering the ranch or selling parts of it, the first sale in 1933 when 50 acres were sold. By a gift deed of July 8, 1926, he granted decedent a one-half interest in said ranch property. Since then all documents with respect to the ranch mention both spouses as owners.

■ Property acquired by the wife by gift, from the husband or from others, is her separate property (Civ. Code, § 162).

■ The conveyance as a gift of an undivided half of the husband's separate property to the wife caused them in the absence of contrary agreement, to hold the ranch as tenants in common (13 Cal.Jur.2d 307), not as community property.

The purchase of the LaSalle automobile and the down payment on the MacArthur property were made with funds obtained by the sale in 1940 of 109 acres of the ranch for more than $18,000. The MacArthur property was bought because decedent wished to have a big house to take in roomers; she was going to pay off the purchase price. The husband first testified that he did not remember whether there was any discussion between him and his wife as to how the title to the property would be taken. After a noon recess he testified that there had been such a discussion; the wife wanted it in her name because she was going to run the rooming business; he agreed but on condition that it would still be community property and he have a half interest in it. Mrs. Inman consented to his having a half interest.

The purchase of the government bonds was made in 1947 after the sale of the last 50 acres of the ranch for $24,000. For $18,000 of said price bonds were bought, nine in the name of the husband, nine in the name of the wife. Twice when funds were needed each sold one bond so that each had seven left. The husband did not list his seven bonds as assets in his wife's estate because they were his separate property. He therefore conceded that the seven bonds in the name of decedent were also her separate property. Such is certainly inconsistent with the husband's original statement that there was no separate, divided property, but only partnership property.

The testimony of the accountant Read that the income tax returns of the spouses were handled as joint returns, all income being split equally between husband and wife, including the rentals received from the MacArthur and Leona Street properties and the profit on the sale of the last 50 acres of the Livermore ranch, and that with respect to the latter he made a note "all community property," is inconclusive as to the character of the property involved, because it included the rental of the Leona Street property, concededly separate property of decedent, and because each of the spouses would have received half of the profit on the sale of the 50 acres irrespective of whether they held the ranch as tenants in common, as partners with equal rights, or as community property, and the name given by the accountant could not be decisive.

If we consider the several items in dispute in the light of the above, the following results. Evidently, there can be no doubt as to the government bonds (item d), which concededly were the separate property of the wife as the result of an agreement of the spouses equally to divide certain funds.

██ The decision with respect to the MacArthur property (item c) is supported by the disputable presumption of Civil Code, section 164, that real or personal property acquired by a married woman by an instrument in writing is her separate property. Whether or not this presumption has been overcome by other evidence is a question of fact for the trial court whose holding in this respect is conclusive on appeal, unless manifestly without support in the evidence. (*Nichols* v. *Mitchell*, 32 Cal.2d 598, 605 [197 P.2d 550]; *Steward* v. *Paige*, 90 Cal.App.2d 820, 824 [203 P.2d 858].) We cannot say that the trial court's conclusion that the presumption was not rebutted was erroneous as a matter of law. ██ The court could reject appellant's testimony on which he relies, under the rule that the trier of facts may reject the testimony even of an uncontradicted witness, provided that he does not act arbitrarily, and that the interest of the witness in the result of the case, the manner in which he testifies, or contradictions appearing in the evidence may justify such rejection (*Hicks* v. *Reis*, 21 Cal.2d 654, 659-660 [134 P.2d 788]; *Huth* v. *Katz*, 30 Cal.2d 605, 608-609 [184 P.2d 521]). Moreover, the deed which conveyed the property to the wife described it as her separate property with the express consent of the husband who participated in the transaction. It has been held that such definitely establishes the character of the prop-

erty as her separate property and that the intent to make a gift will, if necessary, be assumed. (*Miller* v. *Brode*, 186 Cal. 409, 411 [199 P. 531].)

With respect to the ring (item a), not acquired by any writing, the above presumption of section 164 does not apply. ■ The husband testified that when he received the ring out of the estate of his mother shortly after his marriage, his wife wanted it and he handed it to her without any conversation as to his or her rights in it. The court could reasonably infer from the character of the chattel, the relation of the parties and the circumstances of the delivery without reservation or restriction that a gift was intended (*Estate of Claussenius*, 96 Cal.App.2d 600, 607 [216 P.2d 485]). At any rate it is not clear how the ring, which originally was the husband's separate property could have become community property as contended by appellant, without any agreement to that effect.

■ Neither does the presumption of section 164 apply to the automobile (item b). "The certificate of registration is not 'an instrument in writing' by which a person acquires title." (*Pacific Tel. & Tel. Co.* v. *Wellman*, 98 Cal.App.2d 151, 155 [219 P.2d 506].) The implication then is that the property is community property. (*Pacific Tel. & Tel. Co.* v. *Wellman, supra*, at p. 154.), and the burden is on the wife to prove that the property acquired became her separate property by gift or otherwise. (*Estate of Walsh*, 66 Cal.App. 2d 704, 708 [152 P.2d 750].) The husband testified that the car was registered in the wife's name for convenience only, because she did the driving, he having no driver's license anymore. Respondents did not offer any contrary evidence or point out any on appeal, relying on the pink slip only. There is no evidence showing that the purchase of the car after the sale of ranch acreage in 1940 was part of an equal division between the spouses like the purchase of the bonds after the 1947 sale. Nor do we see any substantial basis for an inference that a gift was intended, as was the case with respect to the ring. The decision regarding the automobile will be reversed.

■ The rejection of the lien for reimbursement for improvements made on the Leona Street property by the husband and for the payments made on an encumbrance on said property from funds which the husband testified belonged jointly to him and his wife (item e) is supported by *Dunn* v. *Mullan*, 211 Cal. 583, 588 et seq. [296 P. 604, 77 A.L.R. 1015].

958

That case held that such improvements and expenditures made by the husband from community funds do not give rise to a lien and are presumed to be gifts. (See also *Callnon* v. *Callnon*, 7 Cal.App.2d 676, 680-681 [46 P.2d 988]; *Estate of Turner*, 35 Cal.App.2d 576, 579 [96 P.2d 363].) There was in this case no evidence tending to rebut this presumption.

Insofar as the decree adjudged an interest of the brother and sisters of decedent in the LaSalle automobile which forms part of the estate, it is reversed, in all other respects it is affirmed, each party to pay its own costs on appeal.