[Civ. No. 662. Fifth Dist. Dec. 1, 1966.]

W. W. PHOENIX et al., Plaintiffs and Appellants, v. VINCENT KOVACEVICH et al., Third Party Claimants and Respondents.

Dorris, Fleharty & Underhill and Thomas Underhill for Plaintiffs and Appellants.

Savage & Shepard and James S. Shepard for Third Party Claimants and Respondents.

STONE, J.—This is an appeal from an order for the release of personal property to third party claimants. In an attempt to satisfy a judgment against Raymond S. Froehlich, appellants levied an execution upon property the subject of this third party claim proceeding.

On July 27, 1962, Froehlich sold four tractors and one set of Murphy portable truck scales to Lakeside Sand & Gravel Company, a corporation of which he was president. In payment he accepted a promissory note for $32,900 secured by a chattel mortgage covering the property sold. On July 9, 1963, Lakeside was adjudicated a bankrupt and B. E. Shields, trustee in bankruptcy, took possession of the personal property covered by the mortgage.

On August 29, 1963, at a hearing before the referee in bankruptcy on an order to show cause challenging the validity of the chattel mortgage, Froehlich introduced into evidence the original promissory note and chattel mortgage. The claim of Froehlich was determined to be valid by the district court on December 15, 1964, but the note and mortgage remained a part of the bankruptcy file in the possession of either the bankruptcy court or the federal district court.

On July 9, 1964, appellants obtained judgment against Froehlich, individually, for $39,200, on an unrelated claim. On December 24, 1964, the referee in bankruptcy ordered the personal property abandoned as burdensome, since the amount due under the chattel mortgage exceeded the appraised value of the property.

On December 23, 1964, one day prior to the order of abandonment, appellants levied upon any property of Froehlich in the hands of B. E. Shields, trustee in bankruptcy. The tractors and scales were then in the custody of the trustee so the sheriff was unable to take possession of them.

On December 29, 1964, appellants attempted a levy upon the promissory note and chattel mortgage by serving Froehlich, but the documents were then in the custody of the bankruptcy court.

A second attempt to levy upon the promissory note and chattel mortgage was made on December 30, 1964, by serving

S. B. Gill, who at that time was attorney for Froehlich. As Gill did not have possession of the note and mortgage, the levy was fruitless.

Appellants again levied upon B. E. Shields, trustee in bankruptcy, on December 30, 1964. Answering the garnishment, the trustee stated: "Nothing held. All property released and abandoned as per abandonment order dated December 24, 1964."

On January 4, 1965, appellants attempted to levy upon the note and chattel mortgage by serving William A. McGugin, referee in bankruptcy, and by serving Georgia Madsen, chief clerk of the bankruptcy court. The referee answered: "You are hereby advised that any money or property I have in my possession in which the above named Froehlich has any interest is in my possession in my capacity as Referee in Bankruptcy and therefore, is in custodia legis and not subject to attachment, garnish or levy. See 7 Moore's Fed. Practice Sec. 67.06, page 2208; [*Bucher* v. *Vance*] 36 F.2d 774; [*In re Chakos*] 36 F.2d 776; 6 Am.Jur. 581, 584, 623; *Weidhorn* v. *Levy,* 253 U.S. 268 [64 L.Ed. 898, 40 S.Ct. 534]; [*United States* ex rel. *Magill-Weinsheimer Co.* v. *Sykes*] 44 F.2d 334; 19 Cal.Jur.2d p. 425.

"You are further advised that I have no money, goods, credit, effects or other personal property, or promissory note, or chattel mortgage in my possession or under my control belonging to Raymond S. Froehlich."

Mrs. Madsen's answer was identical, save for omission of the citations.

On January 6, 1965, Froehlich sold the Murphy portable scales to Savage Rock Co. for $3,250 in cash, executing and delivering to the purchaser a bill of sale. On January 7, 1965, Froehlich sold the four tractors to Vincent Kovacevich for $15,000 in cash, executing and delivering to the purchaser a bill of sale.

On January 11, 1965, appellants caused a levy of execution to be made on the tractors which were taken into possession by the sheriff; and on January 14, 1965, appellants caused a levy of execution to be made on the Murphy scales which were also taken into possession by the sheriff.

Kovacevich and Savage, respondents herein, then filed third party claims and when appellants failed to post undertakings, the sheriff released the property to the claimants.

Appellants contend respondents' titles purportedly deriving from Froehlich are defective and the third party

claims are invalid, upon two grounds: first, the mortgage under which Froehlich is alleged to have sold was levied upon by appellants before the sales were made, thus preventing use of the mortgage as a vehicle to transfer title to the property; and second, the sales failed to comply with statutes then in effect, so that each was a nullity.

Appellants concede they were unsuccessful in getting possession of the note and mortgage by the levies of execution, and that the weight of authority in California is that levy upon a promissory note is ineffectual unless the note is taken into possession by the levying officer. (*Hoxie* v. *Bryant,* 131 Cal. 85 [63 P. 153]; *Haulman* v. *Crumal,* 13 Cal.App.2d 612 [57 P.2d 179]; *Jubelt* v. *Sketers,* 84 Cal.App.2d 653 [191 P.2d 460]; *Hecht* v. *Smith,* 183 Cal.App.2d 723 [7 Cal.Rptr. 209].) They contend, however, there should be an exception to the foregoing rule when levy is made on personal property that cannot be taken into possession because it is *in custodia legis.* According to appellants' theory, the note became property not capable of manual delivery under section 542, subdivision 5 of the Code of Civil Procedure, which provides: "Debts and credits and other personal property not capable of manual delivery must be attached by leaving with the persons owing such debts, or having in his possession, or under his control, such credits and other personal property, or with his agent . . . a copy of the writ . . . and, in every case, a notice that the debts owing by him to the defendant, or the credits and other personal property in his possession, or under his control, belonging to the defendant, are attached in pursuance of such writ; . . ."

Technically, the property here is not a debt or a credit but, rather, a note and chattel mortgage evidencing an indebtedness, and levy upon them as tangible personal property was attempted. Had appellants followed available procedures a valid levy could have been made upon such personal property. Rule 20 of the Rules of the Federal District Court of the Southern District provides for application to the district court or to the bankruptcy court for an order directing the clerk to recognize a writ of execution. The California courts have consistently held that property *in custodia legis* may be levied upon if permission is first obtained from the court exercising such custody. For example, in *North* v. *Evans,* 1 Cal.App.2d 64 [36 P.2d 133], levy of execution upon a promissory note which had been attached to a deposition and which was in the hands of the court was effected by the plaintiff obtaining

permission to levy by court order. (See *Lea* v. *Strebe*, 201 Cal.App.2d 227, 230 [20 Cal.Rptr. 20].)

▊ Appellants did not make application for permission to levy upon the note and mortgage. At least until all available remedies are exhausted, we do not believe Code of Civil Procedure section 542, subdivision 5, should be held applicable to personal property capable of manual delivery but held *in custodia legis*.

▊ Although the bankruptcy referee and his clerk could have been more helpful to appellants in this case, they were not required by law to advise appellants as to the manner in which the promissory note and chattel mortgage might be levied upon, nor to advise that the property was shortly to be released to Froehlich as president of the Lakeside Sand & Gravel Company. Certainly the apparent noncooperation of the referee and his clerk is no ground for setting aside the subsequent sale of the property to innocent purchasers for value.

▊ Finally, appellants contend the sales by Froehlich were invalid because title to the released property was vested in Lakeside Sand & Gravel Company, the bankrupt corporation, and not in Froehlich. However, Froehlich, who was an officer of the corporation as well as holder of the note and chattel mortgage, elected not to sell the property on behalf of the corporation subject to the note and mortgage, but to sell the property as mortgagee pursuant to the power vested in him by the terms of the chattel mortgage. There is no question that the mortgagor was in arrears and for that reason the following language of the mortgage became operative: "he [mortgagee] may, at his option, enter upon the premises where said mortgaged personal property may be and take possession thereof; and take such measures as to the mortgagee may be deemed necessary or proper for the care or protection thereof and remove and/or sell and/or dispose of said mortgaged property as a pledge at either public or private sale, with or without notice (the said mortgagor hereby expressly waiving demand of performance, notice of sale and any advertisement of sale), and at said sale the mortgagee or his successor may become the purchaser. . . ."

We find no hiatus in the transfer of title insofar as the authority of Froehlich to sell the property is concerned.

▊ There remains appellants' contention that each sale was invalid because the property was not physically present at the time of sale. The chattel mortgage provides that in case of

default the mortgagee might foreclose the mortgage as provided for in the Code of Civil Procedure of the State of California. The mortgagee elected not to foreclose the mortgage but to exercise the additional right to "dispose of said mortgaged property as a pledge" at private sale without notice. Section 3005[1] of the Civil Code provides that a sale of pledged property must be made in the manner provided by section 694 of the Code of Civil Procedure controlling execution sales. Section 694 requires that personal property capable of manual delivery be within the view of those who attend the sale.

The manner in which the two sales were consummated was not explored very thoroughly at the trial. From the meager information before us it appears that respondent Kovacevich accompanied Froehlich to Bakersfield to view the tractors before committing himself to purchase them. ■ Under settled rules on appeal all reasonable inferences that support the order of the trial court must be indulged in support thereof. ■ It can be inferred that although Kovacevich paid for the property after returning to Fresno and completing arrangements with a bank to finance the purchase, the agreement of sale was reached at the time the buyer inspected the property which was sold at private sale without notice in accordance with the chattel mortgage. (See *Faivret* v. *First Nat. Bank in Richmond,* 160 F.2d 827.)

■ The sale of the portable scales to Savage presents a different situation. This sale was made without an inspection of the property, which was delivered to Savage in Fresno several days after the sale was consummated.

Thus we are faced with the question whether a sale of pledged property at a private sale pursuant to waiver of notice is void or simply voidable if the property was not present at the time of sale. The purpose of the statute is to protect the mortgagor and, derivatively, his creditors. Certainly there is no reason for protecting the mortgagee who conducts the sale and, likewise, there seems to be no purpose behind the statute

---

[1]These sales were held on January 6 and 7, 1965, after the effective date of the Commercial Code. However, section 9504 of that Code is not applicable, for section 10102 provides, in part: "Transactions validly entered into before the effective date specified in Section 10101 and the rights, duties and interests flowing from them remain valid thereafter and may be terminated, completed, consummated or enforced as required or permitted by any statute or other law amended or repealed by this act as though such repeal or amendment had not occurred; . . ." Thus the validity of the sales is governed by the law as it existed prior to the effective date of the Commercial Code.

to protect the mortgagee's creditors. We conclude that in the absence of a showing of fraud or collusion, or both, between the purchaser and the mortgagee selling under a provision for private sale without notice, a sale to an innocent third party who is a bona fide purchaser for value, is valid as against the mortgagee and his creditors. It follows that the third party claims are valid.

The order is affirmed.

Conley, P. J., and McMurray, J. pro tem.,* concurred.

---

*Assigned by the Chairman of the Judicial Council.