[Civ. No. 48154. Second Dist., Div. Three. July 26, 1976.]

LAURA ROSE LAUER, Plaintiff and Appellant, v.
JAMES M. ROSE, Defendant and Respondent.

494

COUNSEL

Coskey, Coskey & Boxer and Samuel W. Gordon for Plaintiff and Appellant.

Simon Taub and Daniel R. Barbakow for Defendant and Respondent.

OPINION

**ALLPORT, J.**—The record before us discloses that James M. and Laura Rose were married on June 30, 1948, in New York. On February 4, 1966, Laura and James executed a property settlement agreement and that marriage was subsequently dissolved.

On or about June 30, 1966, James married Sandra H. Rose in Beverly Hills, California. On March 23, 1970, James quitclaimed to Sandra Rose as her sole and separate property certain real property in Beverly Hills, title to which had been in their names as joint tenants. This was done on advice of legal counsel to "protect Sandra Rose's property." Sandra's marriage to James was subsequently dissolved by order of the superior court in Los Angeles pursuant to a petition filed June 26, 1972. The Beverly Hills property continued to remain in Sandra's name at least until July 18, 1975. This property was purchased by James and Sandra during their marriage. The down payment was made mostly with Sandra's separate funds although an unspecified amount of community funds was used as part of the down payment and to make note and tax payments thereon during the marriage. Eventually Sandra moved to Florida and as of June 17, 1975, the property was listed for sale. At that time James was residing therein for caretaker purposes until a sale should be consummated.

During this period Laura remarried and obtained a judgment in New York against James for breach of the terms of the settlement agreement executed at the time of her separation from him and on August 2, 1974, a judgment was entered thereon in the superior court in Los Angeles in Laura's favor and against James in a sum in excess of $44,000. Laura caused a writ of execution (on judgment) to issue thereon and on June 3, 1975, caused the sheriff to levy upon "all the right, title and interest of James M. Rose . . . in the real property [Beverly Hills] . . . , standing . . . in the name of Sandra Rose as her sole and separate property." A sheriff's sale of the property under execution was noticed for July 30, 1975.

Pursuant to James' motion filed June 23, 1975, the superior court vacated and quashed the notice of levy and writ of execution and restrained the sale. Laura appeals from that order. The appeal lies. (Code Civ. Proc., § 904.1, subd. (b); *Vest* v. *Superior Court,* 140 Cal.App.2d 91, 96 [294 P.2d 988].)

## *Contention*

It is contended on appeal that the trial court erred as a matter of law in granting the motion and that, since the declaration of Simon Taub in support of the motion discloses the existence of a fraudulent conveyance from James to Sandra, Laura was entitled to proceed with the levy without first filing suit to set aside the conveyance.

## Discussion

We note at the outset that no question of lack of due process arises since defendant's notice of motion was duly set for hearing and notice thereof properly served upon plaintiff's attorneys. The motion was based upon the ground that plaintiff sought to levy, not on property owned by defendant, but on real property in which defendant "James M. Rose has no right, title or interest." In addition to three sets of points and authorities, the motion was supported by declarations of James M. Rose and Simon Taub, an affidavit of Sandra Rose and exhibits consisting of a quitclaim deed and preliminary title report of Title Insurance and Trust Company reflecting that title to the involved real property was vested in "Sandra Rose, as her separate property" from March 23, 1970. Original and supplemental points and authorities were served and filed by plaintiff in opposition to the motion and were accompanied by an exhibit consisting of portions of a deposition of James M. Rose taken in another action between the parties relative to payment by James of some $700 per month for trust deed payments and property taxes on the involved property from 1969 to the date of the deposition, February 12, 1974. The hearing on the motion was held July 25, 1975, in department 86 of the superior court and the court's minute order reflects that attorneys for both plaintiff and defendant were present, that judicial notice of the marriage dissolution action between Sandra and James, case No. WE D 2054, was taken and that the motion to quash was granted. ■ In ruling on such a motion, no findings of fact and conclusions of law are required. (*In re Marriage of Simmons,* 49 Cal.App.3d 833, 836 [123 Cal.Rptr. 213]; *Clinton* v. *Joshua Hendy Corp.,* 244 Cal.App.2d 183, 187-188 [52 Cal.Rptr. 875]; *Parker* v. *Parker,* 107 Cal.App.2d 215, 217 [236 P.2d 828].) Nevertheless, in view of the extensive declarations, affidavits, exhibits and points and authorities presented to the trial court as well as the opportunity afforded counsel at the hearing for oral argument, it must be presumed the trial court found that James had no right, title nor interest in Sandra's property since the motion was based on this ground and was granted. (*Phoenix* v. *Kovacevich,* 246 Cal.App.2d 774, 780 [55 Cal.Rptr. 135].) ■ It follows that if James had no right, title nor interest in the property, no fraudulent conveyance was involved and Civil Code section 3439.09,[1] relied upon by plaintiff in support of her right to levy execution on the property, is inapplicable.

---

[1]Section 3439.09 provides in pertinent part: "(a) Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person . . . :

(1) Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim, or (2) Disregard the conveyance and attach or levy execution upon the property conveyed.".

Plaintiff's reliance upon *Blue* v. *Superior Court,* 147 Cal.App.2d 278 [305 P.2d 209], and *Vest* v. *Superior Court,* 140 Cal.App.2d 91 [294 P.2d 988], is misplaced. Although the facts in *Blue* and *Vest* are somewhat similar to the case at bench, these cases are distinguishable and not controlling of our decision herein. Both *Blue* and *Vest* involved proceedings in mandamus to compel the superior courts to annul their orders quashing executions levied on real property standing in the names of wives of judgment debtors. In *Blue* the order quashing the execution was based upon an answer filed by the wife to a petition of the judgment creditor under Civil Code section 1246 while in *Vest* the order resulted from a motion by the wife to set aside and quash the execution. In both cases a writ of mandamus was granted, the appellate court holding that none but the parties to the action (neither wife was) could move to quash a writ of execution. (*Blue* v. *Superior Court, supra,* p. 283; *Vest* v. *Superior Court, supra,* p. 93.) In the case at bench, the moving party is the judgment debtor.

We are not unaware of the holding in *Blue, supra,* at page 284, that if the issue of the effectiveness of the claimed fraudulent conveyance could be decided in an execution proceeding, Civil Code section 3439.09 would become meaningless. Nevertheless we do not deem that section 3439.09 is to be so construed in all situations. Here James quitclaimed his interest in the property to Sandra to "protect" her property in March 1970—over four years before the judgment was rendered herein. Since virtually all of the down payment on the property was derived from Sandra's separate property, the only interest James might have could only find its source in the trust deed and tax payments made from his community earnings. But in making such expenditures the husband is presumed to have made a gift to his wife. In *Estate of Bernatas,* 162 Cal.App.2d 693, the court said at page 699 [328 P.2d 539]: " '. . . It is presumed that it was his intention "to advance the money for the benefit of his wife's estate and that it was to accrue to her interest." (*Carlson* v. *Carlson,* 10 Cal.App. 300 [101 P. 923].) The reasons given for this holding are two, *viz.*: (1) he is presumed to have intended a gift because (2) he had authority to control the disposition of community funds. (*Dunn* v. *Mullan, supra.*)' The court then refers to the statement in 31 Corpus Juris Secundum, 1170, to the effect that the general rule is that the community has a claim against the ·eparate estate of either spouse for expenses properly incurred in behalf of such estate, and states (p. 579): 'This is clearly the rule in all cases involving improvements made on a separate

estate out of community funds except cases mentioned in the next preceding paragraph in which the husband makes improvements on the wife's paraphernal property.' (See also *Spreng* v. *Spreng*, 119 Cal.App. 155, 159 [6 P.2d 104]; *Callnon* v. *Callnon*, 7 Cal.App.2d 676, 680-681 [46 P.2d 988]; *Tompkins* v. *Bishop*, 94 Cal.App.2d 546, 550 [211 P.2d 14]; *Cullen* v. *Spremo*, 142 Cal.App.2d 225, 229 [298 P.2d 579]; *Estate of Inman*, 148 Cal.App.2d 952, 958 [307 P.2d 953]; see also Armstrong, California Family Law, pp. 616, 617, 618.)

"Thus, it is clear that in California community payments made by the husband on the wife's separate property are presumed, in the absence of an agreement to the contrary, to constitute a gift to her."

In the case at bench there is no evidence of any such agreement. (See also *Estate of Armstrong*, 241 Cal.App.2d 1, 9-10 [50 Cal.Rptr. 339]; *Brown* v. *Meredith*, 220 Cal.App.2d 762, 765-766 [34 Cal.Rptr. 153]; *Estate of Inman*, 148 Cal.App.2d 952, 957-958 [307 P.2d 953].)

In view of the above it would appear extremely unlikely that James has any right, title or interest in Sandra's property. It then immediately becomes apparent that serious problems would result from permitting sale under section 3439.09 without first determining what interest could be sold. As was said in *Schoenfeld* v. *Norberg*, 11 Cal.App.3d 755, at page 760 [90 Cal.Rptr. 47]: "Without determining that the property was community, the court could not effectively order the entirety sold to satisfy a judgment against the husband. Even though appellants assertedly took title by means of an instrument in form of a joint tenancy deed, that form would not be conclusive evidence that the property was held in joint tenancy; if it could be shown that the parties intended to hold the property as community, that intent would prevail. (*Estate of Baglione* (1966) 65 Cal.2d 192, 195 [53 Cal.Rptr. 139, 417 P.2d 683]; *Tomaier* v. *Tomaier* (1944) 23 Cal.2d 754 [146 P.2d 905].) Until the nature of the judgment debtor's interest is determined, any execution sale would be hampered by the inability of any prospective bidder to ascertain what he was to bid on."

Assuming that a bidder could be obtained and a sale consummated, recordation of the deed evidencing the sale creates a cloud upon the title which can only be removed by a judicial determination of the interest purchased. In this respect the result is not unlike the prior law which permitted prejudgment attachments depriving a debtor of property before notice or hearing and which was declared invalid by the Supreme

Court in *Randone v. Appellate Department,* 5 Cal.3d 536 [96 Cal.Rptr. 709, 488 P.2d 13]. Although no question of due process arises as to sale under writ of execution of James' property since he is the judgment debtor, we conclude that the rationale of *Randone* authorizes judicial interference with an indiscriminate sale affecting Sandra's property without due process of law. Not being a party to the action between Laura and James, Sandra has had no opportunity to establish that the property was her sole and separate property.

The order appealed from is affirmed.

Cobey, Acting P. J., and Potter, J., concurred.