Filed 1/7/14 (unmodified opn. attached)

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| NATIONAL FINANCIAL LENDING, LLC, | D064226 |
| Petitioner, | (Super. Ct. No. 2007-00074230-CU-BC-CTL) |
| v. | |
| THE SUPERIOR COURT OF SAN DIEGO COUNTY, | ORDER MODIFYING OPINION |
| Respondent; | [NO CHANGE IN JUDGMENT] |
| BREWER CORPORATION et al., | |
| Real Parties in Interest. | |

THE COURT

It is ordered that the opinion filed herein on December 18, 2013 be modified as follows:

1.      On pages 21 and 22 replace all instances of the word "Berger" with the word "Brewer."

This modification does not change the judgment.

BENKE, Acting P. J.

1

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| NATIONAL FINANCIAL LENDING, LLC, | D064226 |
| Petitioner, | (Super. Ct. No. 2007-00074230-CU-BC-CTL) |
| v. | |
| THE SUPERIOR COURT OF SAN DIEGO COUNTY, | |
| Respondent; | |
| BREWER CORPORATION et al., | |
| Real Parties in Interest. | |

ORIGINAL PROCEEDINGS in mandate. William R. Nevitt, Jr., Judge. Petition denied.

Dale A. Martin; Law Offices of Jeffrey S. Benice and Jeffrey S. Benice for Petitioner.

No appearance for Respondent.

Lincoln, Gustafson & Cercos, Theodore R. Cercos; Law Offices of Murray M. Helm, Jr., Murray M. Helm, Jr.; Marks, Finch, Thornton & Baird, Jon F. Gauthier; Hoyt Law Firm, Kenneth C. Hoyt; Niddrie, Fish & Addams and David A. Niddrie for Real Parties in Interest.

In this writ proceeding, we deny a third party debtor's petition in which it challenges the trial court's order denying the debtor's Code of Civil Procedure[1] section 170.6 peremptory challenge.

In the trial court, the plaintiff obtained a $2.8 million judgment against a defendant, a construction lender that failed to meets its commitment with respect to a condominium project in San Diego. The plaintiff has unsuccessfully attempted to satisfy the judgment through a myriad of postjudgment collection proceedings.

The third party debtor is controlled by the sole shareholder of the defendant construction lender and owes the defendant substantial amounts. The plaintiff alleges it served the third party with a notice of levy and that, nonetheless, the third party debtor thereafter paid the defendant more than $2 million in management fees.

The third party's payment to the defendant in part gave rise to the plaintiff's application to the trial court for appointment of a limited receiver. Following a contested hearing, the receiver was appointed. However, the defendant did not cooperate with the receiver, who then applied to the trial court for a clarification of his powers and access to

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

books and records of the defendant and the closely-related third party debtor (among others). The defendant shortly thereafter filed for bankruptcy.

After the defendant filed its bankruptcy petition, the plaintiff filed a motion under section 701.020 to make the third party debtor liable for the money it transferred to the defendant.

Upon being served with the plaintiff's section 701.020 motion, the third party debtor filed a motion to quash service of the notice of levy of execution and a peremptory challenge under section 170.6. The trial court denied the challenge, and the third party debtor filed a timely petition for a writ of mandate. We issued an order to show cause as well as a stay of all further trial court proceedings.

As we explain, a motion under section 701.020, by which a judgment creditor seeks to impose liability for failure to honor a notice of levy, although it implicates substantial interests of third parties and gives rise to a separate adversary factfinding process, is nonetheless an incident to the underlying action and is not itself a separate special proceeding that will support a peremptory challenge under section 170.6. (See *Avelar v. Superior Court* (1992) 7 Cal.App.4th 1270, 1275-1276.) The same is true of NFL's motion to quash. Accordingly, because the trial judge had previously determined the judgment creditor's liability as a matter of fact, no parties, even those joined thereafter, had the right to a section 170.6 challenge.

Moreover, even if we considered the motion under section 701.020 as a special proceeding within the meaning of sections 23 and 170.6, it was based in substantial part

4

on the same set of facts that gave rise to the plaintiff's earlier motion for appointment of a limited receiver and, as we explain, was therefore a continuation of that postjudgment proceeding. Because that proceeding included a disputed factual hearing, no party which thereafter was brought into the proceeding could bring a peremptory challenge under section 170.6.

In short, the third party debtor's section 170.6 challenge is barred either by the fact that the trial court resolved the judgment debtor's liability or by its determination to appoint a receiver.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

A. *Brewer et al. v. PCF*

This case arises out of the development of a luxury condominium project located at the north end of Balboa Park in San Diego and known as Mi Arbolito. Plaintiffs and real parties in interest, Brewer Corporation, Dynalectric Company, Brady Company/San Diego, Inc., and Division 8, Inc. (collectively the Brewer plaintiffs), are contractors who provided substantial amounts of material and work on the project. The underlying dispute arose because construction on the project stopped before the Brewer plaintiffs were paid in full for their material and work.

---

[2] The parties' August 23, 2013 and September 3, 2013 requests for judicial notice of matters that took place in separate superior court and later United States Bankruptcy Court proceedings are denied.

The Brewer plaintiffs sued both the developer, Mi Arbolito, LLC, and the construction lender, Point Center Financial, Inc. (PCF). Although Mi Arbolito, LLC filed for bankruptcy, the Brewer plaintiffs obtained a $2.7 million judgment against PCF.

B. *PCF & NFL*

PCF is wholly owned by Dan J. Harkey, who is also its president. According to a declaration Harkey filed in the trial court, PCF has been in business for more than 30 years. Harkey stated that National Financial Lending, LLC (NFL) is a California limited liability company that is managed by PCF and that he is NFL's designated agent for service of process. According to Harkey, NFL is composed of over 1300 members, one of which is PCF.

C. *Notice of Levy*

On April 26, 2012, the Brewer plaintiffs served NFL with notices of levy of execution totaling $2.2 million. The notices of levy were personally served on a person identified only as Jane Doe at offices PCF and NFL share. The proof of service states that Jane Doe refused to identify herself.

Some months after the notices of levy were served on NFL, the Brewer plaintiffs discovered that, notwithstanding the levies, NFL transferred $2.08 million it held to PCF.

D. *Receivership*

After the Brewer plaintiffs discovered NFL's transfers to PCF, they moved to have a limited receiver appointed over PCF's assets. PCF contested the appointment of a

6

receiver and, after conducting a factual hearing, the trial court determined a receiver was necessary.

The receiver had difficulty obtaining PCF records he believed he needed in order to fulfill his receivership obligations. While the receiver's motion to clarify his duties and authority was pending in the trial court, PCF filed a petition for bankruptcy. The Brewer plaintiffs then obtained partial relief from the automatic stay in the PCF bankruptcy that permitted them to pursue third party debtors of PCF, including NFL, for levy violations.

E. *Section 701.020 Motion and Motion to Quash*

On June 17, 2013, the Brewer plaintiffs personally served NFL's agent for service of process, Dan Harkey, with a notice of its section 701.020 motion to impose liability on NFL for its violation of the April 2012 notices of levy.

On June 28, 2013, NFL responded to the section 701.020 motion by filing a motion to quash the notices of levy in which it argued that service of the notices on a Jane Doe at its offices was not valid.

Also on June 28, 2013, NFL filed a peremptory challenge to the trial judge presiding over the case under section 170.6. The trial judge denied the challenge on the grounds that neither the Brewer plaintiffs' motion under section 701.020 nor NFL's motion to quash are actions or special proceedings subject to section 170.6.

As we indicated at the outset, NFL filed a petition for a writ of mandate, and we issued an order to show cause and stay.

7

DISCUSSION

I

A. *Section 170.6*

By its terms, section 170.6 applies in any "civil or criminal action or special proceeding of *any kind or character*." (§ 170.6, subd. (a)(1), italics added.) Under the statute any "party to, or an attorney appearing in, an action or proceeding" may file a motion to disqualify the judge before whom the action is pending if the motion is supported by an affidavit or statement under oath that simply declares the party or attorney believes the presiding judge in the action or proceeding is biased against the party, the attorney, or the interest of the party or the attorney. (§ 170.6, subd. (a)(2).) Upon presentation of such a motion and affidavit or statement under oath, the action or proceeding must be assigned to another judge. (§ 170.6, subd. (a)(3).)

In a case such as this, where a trial judge has been assigned for all purposes, a new party or attorney representing a new party must make the motion within 15 days of appearing. (§ 170.6, subd. (a)(2).) However, only one motion may be made for each side in any one action or special proceeding. (§ 170.6, subd. (a)(4).) Moreover, neither side in a proceeding may make a motion under section 170.6 after trial has commenced or the trial judge has resolved a disputed issue of fact relating to the merits. (§ 170.6, subd. (a)(2); *Stephens v. Superior Court* (2002) 96 Cal.App.4th 54, 60 (*Stephens*).) Importantly, these limitations apply even to third parties who are brought into an action or special proceeding after a challenge has been made or a factual issue has been

8

determined. (See *School Dist. of Okaloosa County v. Superior Court* (1997) 58 Cal.App.4th 1126, 1135 [after challenge made]; *Stephens*, at p. 61.)

"The right to exercise a peremptory challenge under Code of Civil Procedure section 170.6 is a substantial right and an important part of California's system of due process that promotes fair and impartial trials and confidence in the judiciary. [Citation.] As a remedial statute, section 170.6 is to be liberally construed in favor of allowing a peremptory challenge, and a challenge should be denied only if the statute absolutely forbids it. [Citation.]" (*Stephens*, *supra*, 96 Cal.App.4th at pp. 61-62.) "At the same time, section 170.6 is designed to prevent abuse by parties that merely seek to delay a trial or obtain a more favorable judicial forum." (*The Home Ins. Co. v. Superior Court* (2005) 34 Cal.4th 1025, 1032.) The general aim of the legislation is to "strike a balance between the needs of litigants and the operating efficiency of the courts. [Citation.] [¶] To effectuate the Legislature's intent, our courts 'have been vigilant to enforce the statutory restrictions on the number and timing of motions permitted.' [Citation.] We have not permitted ""a device intended for spare and protective use to be converted into a weapon of offense and thereby to become an obstruction to efficient judicial administration."" [Citations.]" (*Id*. at pp. 1032-1033, fn. omitted.)

B. *Section 701.020*

Section 701.020 states: "(a) If a third person is required by this article to deliver property to the levying officer or to make payments to the levying officer and the third

9

person fails or refuses without good cause to do so, the third person is liable to the judgment creditor for whichever of the following is the lesser amount:

"(1)  The value of the judgment debtor's interest in the property or the amount of the payments required to be made.

"(2)  The amount required to satisfy the judgment pursuant to which the levy is made.

"(b)  The third person's liability continues until the earliest of the following times:

"(1)  The time when the property levied upon is delivered to the levying officer or the payments are made to the levying officer.

"(2)  The time when the property levied upon is released pursuant to Section 699.060.

"(3)  The time when the judgment is satisfied or discharged.

"(c)  If the third person's liability is established, the court that determines the liability may, in its discretion, require the third person to pay the costs and reasonable attorney's fees incurred by the judgment creditor in establishing the liability."

According to the Law Revision Commission comment, a judgment creditor may enforce the liability imposed by section 701.020 either pursuant to examination proceedings under article 2, chapter 6 of title 9 of the code, section 708.110 et seq. or by way of a separate creditor's suit under article 3, chapter 6 of the code, section 708.210 et seq.  (16 Cal. Law Revision Com. Rep. (1982) p. 1349.)

C. *Motion to Quash Notice of Levy*

The cases have recognized that a notice of levy may be challenged by a motion to quash. (See *Lauer v. Rose* (1976) 60 Cal.App.3d 493, 496.) In ruling on such a motion, the trial court is not required to render any statement of decision. (*Ibid.*)

## II

As we noted at the outset, NFL's section 170.6 challenge is barred either by the fact the Brewer plaintiffs' section 701.020 motion and NFL's own motion to quash are mere incidents of the underlying action and the trial judge's earlier determination of PCF's liability bars any further peremptory challenges or, more narrowly, because even if considered special proceedings, the motions to impose liability and quash are nonetheless a continuation of the receivership proceeding.

A. *Incidents of an Action*

We have not been cited to and are not aware of any cases that have directly considered whether a motion under section 701.020 or a motion to quash a notice of levy are special proceedings within the meaning of sections 23 and 170.6. We conclude that neither a section 701.020 motion brought in the same action in which the underlying judgment was entered nor a motion to quash service of a notice of levy are special proceedings but rather are only incidents of the underlying action and do not give rise to a separate right to a peremptory challenge under section 170.6. Our narrow interpretation of special proceedings is not only consistent with the cases that have considered section 23 and its definition of the term, it is also consistent with the balance the Legislature has

11

attempted to draw between the important right of litigants to challenge trial judges at the outset of proceedings and the operating efficiency of the trial courts.

Under section 21, judicial remedies are defined as actions and special proceedings. Section 22 defines actions as: "An action is an ordinary proceeding in a court of justice by which one party prosecutes another for the declaration, enforcement, or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense." Section 23, in turn, states: "Every other remedy is a special proceeding."

"The phrase 'special proceeding' is used in the code practice in contradistinction to 'action.' That phrase has no reference to provisional remedies in actions at law or in equity. It has reference only to such proceedings *as may be commenced independently of a pending action* by petition or motion upon notice in order to obtain special relief." (*In re Sutter-Butte By-Pass Assessment* (1923) 190 Cal. 532, 537, italics added.) "The phrase therefore appears to apply only to a proceeding which is distinct from, and not a mere part of, any underlying litigation." (*Avelar v. Superior Court* (1992) 7 Cal.App.4th 1270, 1275 (*Avelar*).) "The phrase cannot be defined to include every procedural step or mechanism employed within the context of pending litigation. By describing a 'special proceeding' as any remedy not available in an 'action,' the Legislature must have meant to create and recognize two roughly equivalent levels of *independent procedures* to be directed towards the attainment of different, but similarly final remedies." (*Id*. at p. 1276, italics added.)

In *Avelar*, a criminal defendant, who had been charged with battery and assault with a deadly weapon on a police officer, moved for discovery of complaints of excessive force made against the officer. The request for complaints was governed by Evidence Code section 1043, which sets forth notice and good cause requirements for such motions. In response to the defendant's motion, the officer's employer, a local police department, filed an affidavit under Code of Civil Procedure section 170.6 that sought to disqualify the trial judge. The trial judge found that the affidavit was effective and disqualified himself. The defendant filed a petition for a writ of mandate in which he argued that discovery proceedings under Evidence Code section 1043 are not special proceedings that give rise to any right under Code of Civil Procedure section 170.6. The court granted the writ. "[I]t can be argued that where the Legislature prescribes specific procedures by which the disclosure of information may be compelled—procedures which are more onerous and complex than those routinely involved in discovery—it should be assumed that the Legislature has found the information in question deserving of special protection. We recognize that the statutory scheme with respect to police officer personnel records does reflect a legislative desire to deter harassing and unjustified efforts to obtain personally private and confidential information contained in those records. However, with all due respect to law enforcement personnel, we are unwilling to conclude that their interests in privacy are necessarily of greater legal significance than that of other individuals asked to reveal intimate information, or information as to which a legal privilege may be claimed." (*Avelar*, *supra*, 7 Cal.App.4th at p. 1279.)

13

Importantly, the court in *Avelar* recognized the significance of the fact that the defendant's discovery motion was part of an ongoing criminal action, rather than an independent proceeding to which the right to a peremptory challenge would arise. Although the Penal Code itself identifies a host of procedures as "Special Proceedings of a Criminal Nature" (Pen. Code, § 1473 et seq.), including motions under Evidence Code section 1043 (Pen. Code, §§ 1543-1545), the court found that this description of various criminal procedures does not necessarily mean they become "special proceedings" within the meaning of Code of Civil Procedure section 23 when they are used as "mere component parts of a primary action." (*Avelar*, *supra*, 7 Cal.App.4th at p. 1276.) The court noted, "[I]f no criminal action is pending, an owner's motion under Penal Code sections 1539-1540 for the return of property seized under a warrant would be properly classed as a 'special proceeding.' [Citation.] However, if a criminal prosecution is pending, a defendant could not exercise two separate peremptory challenges, one at a motion to suppress under Penal Code section 1538.5, and another at the trial itself." (*Ibid.*) In reaching this conclusion, the court relied on *Le Louis v. Superior Court* (1989) 209 Cal.App.3d 669, 676-679, in which the court concluded that a preliminary hearing is a part of the criminal action, and not a "special proceeding" giving rise to a separate right under Code of Civil Procedure section 170.6.

In finding that the police department had no separate right to file a peremptory challenge, the court was also concerned about the practical implications of permitting nonparty witnesses to file challenges and "the potential for chaos, especially at the actual

14

trial," if such challenges were permitted. (*Avelar*, *supra*, 7 Cal.App.4th at p. 1278.) The court's emphasis in *Avelar* on whether a proceeding is an incident of a pending action or a separate independent proceeding is consistent with earlier cases that also turned on this distinction.

In the earlier case of *Murphy v. Davids* (1921) 55 Cal.App. 416, the judgment debtor acquired judgments that had been entered against the judgment creditor and attempted to use them as an offset against execution of the judgment the judgment debtor had suffered. The judgment creditor objected to the offset on the grounds the judgments were more than five years old and had not been extended under Code of Civil Procedure former section 685 in the action in which they had been entered. In finding that no offset was permissible, the court found that Code of Civil Procedure former section 685 did not create a separate special proceeding that permitted relief from the five-year limit on the validity of judgments in any action other than in the action in which the judgments had been entered. The court stated: "A procedure under [former] section 685 constitutes neither an 'action' nor a 'special proceeding of a civil nature' within the meaning of those terms, nor is it in the nature of either. 'It is a mere subsequent step in an action or special proceeding already commenced, which is governed entirely, so far as the time within which the same may be taken is concerned, by the provisions of the statute specially relating thereto.'" (*Murphy v. Davids*, *supra*, 55 Cal.App. at p. 420.)

Because the Brewer plaintiffs' section 701.020 motion and NFL's motion to quash the notice of levy were filed in the same action in which the judgment was entered, they

15

were both incidents of that action and not special proceedings within the meaning of sections 23 and 170.6. The cases are clear that special proceedings are remedies that are *independent* of a pending action and not, as here, procedures that are "a mere part of[] any underlying litigation." (*Avelar*, *supra*, 7 Cal.App.4th at p. 1275.) This limitation on the meaning of special proceedings is particularly appropriate here where a litigant is attempting to classify a particular postjudgment collection procedure as a special proceeding as a means of employing a peremptory challenge under section 170.6.

As we have noted, although section 170.6 is a remedial statute and, as such, should be interpreted liberally, the statute also sets forth important procedural limits that are designed to prevent abuse and promote efficiency in our courts. (See *The Home Ins. Co. v. Superior Court*, *supra*, 34 Cal.4th at pp. 1032-1033; *Stephens*, *supra*, 96 Cal.App.4th at pp. 61-62.) Treating any of the myriad of postjudgment collection proceedings set forth in our Code of Civil Procedure (see § 695.010 et seq.) as a special proceeding within the meaning of sections 23 and 170.6 would give both the plaintiff and the defendant renewed opportunity to file peremptory challenges, free of the time, numerical and merit resolution limitations that would otherwise limit the challenges. (See § 170.6, subd. (a)(2), (4).) The opportunity for new peremeptory challenges would materially complicate and unnecessarily delay judgment collection, especially in cases such as this where collection proceedings involve multiple entities closely related to the judgment debtor and a series of closely connected procedures. The efficiency of having one judge preside over all such proceedings is manifest in this record: here, the trial judge was

familiar with the conduct that gave rise to PCF's liability, the Brewer plaintiffs conducted extensive debtor examinations of PCF and, based on that information, served notices of levy on, among others, PCF's affiliate, NFL, obtained a receivership and finally made their motion to impose liability under section 701.020.

Distinguishing the section 701.020 motion on the basis that the financial interests at stake are substantial and that the trial court is required to resolve disputed issues of fact is unpersuasive. At the very least, that rationale would require that a receivership, which greatly intrudes on the interests of a judgment debtor and may require multiple factual determinations, also be treated as a special proceeding. Thus, in a civil action, it would be possible that one judge would determine liability, another would judge preside over a receivership and yet a third judge would determine whether liability arose under section 701.020. The inefficiency and impracticability of such a regime strongly support our continued recognition of the general rule that special proceedings are only those proceedings that are independent of any ongoing action.[3]

---

[3]   The only exception to this limitation on the definition of special proceedings we have been able to identify arises in civil contempt proceedings where imprisonment is a remedy. (See *Bridges v. Superior Court* (1939) 14 Cal.2d 464, 473.) Arguably, there, the particular liberty interests at stake warrant treating a contempt proceeding as a special proceeding in which the contemnor has the right to file an affidavit under section 170.6. However, as we explain in part II of the opinion, even when a contempt proceeding is taking place, the right to file an affidavit under section 170.6 is subject to the "continuation of proceedings" rule. (See *McClenny v. Superior Court* (1964) 60 Cal.2d 677, 684-685 (*McClenny*).)

It is also important to recognize that the fact NFL was a new party to the proceeding did not impact application of the limitation imposed by section 170.6, subdivision (a)(2). (See *Stephens*, *supra*, 96 Cal.App.4th at pp. 61-67.)

In sum, because neither the motion to impose liability under section 701.020 nor the motion to quash are themselves special proceedings, their initiation did not give rise to any new right to file a peremptory challenge under section 170.6. Because the trial court had resolved questions of fact in the underlying action against PCF at the time the postjudgment motions were made, the right to a peremptory challenge under section 170.6 had expired. (§ 170.6, subd. (a)(2).)

### III

Even if we treat either or both the section 701.020 motion and the motion to quash as special proceedings akin to a contempt proceeding,[4] rather than as incidental to the underlying action against PCF, NFL still has no right to file a section 170.6 affidavit.

In *Stephens*, *supra*, two trustees and a beneficiary of a trust initially petitioned for instructions with respect to appointment of a third trustee required under the terms of the trust and for an amendment to the trust permitting majority rather than unanimous decisionmaking. One of the beneficiaries filed a separate petition seeking removal of the trustees and appointment of an independent corporate trustee and, in the alternative, confirming appointment of a third trustee. The trial court heard the petitions together and

---

[4]    See *Bridges v. Superior Court*, *supra*, 14 Cal.2d at page 473.

18

denied the motion to amend the trust and directed that, with her consent, one of the beneficiaries be confirmed as the third trustee.

While the trustees' appeal of the trial court's order was pending, the prospective trustee filed a separate petition seeking, among other matters, removal of the two incumbent trustees and appointment of an independent trustee. The trustees objected to the petition and were joined by two other beneficiaries, one of whom had not previously appeared in the probate proceeding. The late appearing beneficiary, David, filed a section 170.6 affidavit, which the trial court disallowed.

We denied David's petition for relief from the trial court's disposition of his section 170.6 affidavit. In doing so, we recognized that each petition in the probate matter might itself be considered a separate action or special proceeding, rather than the incident of an action or proceeding: "[I]n a case of indefinite duration involving multiple and successive proceedings and causes, a late appearing party may, within 10 days of appearing, challenge an all purpose, assigned judge under section 170.6 if no trial has commenced and no contested fact determinations have been made in the proceeding in which the party appears, and that proceeding is not a continuation of an earlier proceeding in which the judge determined a contested fact issue or the trial of a cause commenced." (*Stephens*, *supra*, 96 Cal.App.4th at p. 62.)

However, we found that David's challenge was nonetheless barred by the "continuation of proceedings" doctrine first set forth in *Jacobs v. Superior Court* (1959) 53 Cal.2d. 187, 190-191 (*Jacobs*). "'Although [section 170.6] does not expressly so

19

provide, it follows that, since the [peremptory challenge] must be made before the trial has commenced, it cannot be entertained as to subsequent hearings which are part or a continuation of the original proceedings.' [¶] The rationale for the rule is that if a peremptory challenge is allowed in a proceeding that is a continuation of a prior proceeding in which trial occurred, 'it would mean that the judge who tried the case, and who is ordinarily in the best position to pass upon the questions involved, could by a mere general allegation of prejudice, and without any judicial determination of the facts, be disqualified . . . .  Such procedure would make it possible for litigants to gamble on obtaining a favorable decision from one judge, and then, if confronted with an adverse judgment, allow them to disqualify him . . . in the hope of securing a different ruling from another judge in supplementary proceedings involving substantially the same issues.' [Citation.]" (*Stephens*, *supra*, 96 Cal.App.4th at pp. 59-60.)  The gravamen of the doctrine is the principle that "'a proceeding is a continuation of the original action out of which it arises if it involves "substantially the same issues" as the original action.' [Citation.]" (*Id*. at p. 60.)

Because the prospective trustee's petition and the earlier petition were all related to the issue of whether the two incumbent trustees were guilty of misconduct, we found the prospective trustee's petition was a continuation of the trial court's previous proceedings. (*Stephens*, *supra*, 96 Cal.App.4th at pp. 63-64.)  Because the trial judge had resolved disputed questions of fact when ruling on the initial petitions, we found that the right to file a peremptory challenge had lapsed.

20

Importantly, in *Stephens*, we did not require that there be a precise identity between the parties in both proceedings but instead required that there be an identity of interests in both proceedings. (*Stephens*, *supra*, 96 Cal.App.4th at pp. 63-64.)

In *Stephens*, we relied in part on the holding in *McClenny*, *supra*. In *McClenny*, the trial court in a divorce proceeding had, by separate orders, granted custody of a minor child to the wife and imposed a receivership. Following its orders, the trial court issued orders to show cause regarding contempt to the husband because he had failed to return the child to the mother following a visitation and sold personal property that was subject to the receivership. The husband responded to the orders to show cause by filing an affidavit under section 170.6. In holding that the contempt proceedings were a continuation of the proceedings in which the underlying orders were issued, the court stated: "Although the issues to be presented in the contempt proceeding may not be identical in every particular to the issues previously submitted to [the trial judge], the questions involving the interpretation of the orders allegedly contemned, and indeed, the issue of whether defendant in fact violated [the trial judge's] orders, are 'matters *necessarily relevant and material to the issues involved in the* [original] *action.*' [Citation.]" (*McClenny*, *supra*, 60 Cal.2d at p. 684.) In rejecting the husband's contention that the contempt proceedings were separate and independent of the prior proceedings, the court noted the practical considerations the husband's argument presented: "Acceptance of defendant's position would permit litigants to obtain, by repeated cycles of a contemptuous act and a motion based upon section 170.6, a

21

perpetually fresh forum for testing disadvantageous decisions. We cannot ignore in defendant's position the potentiality for abuse of section 170.6. We cannot permit a device intended for spare and protective use to be converted into a weapon of offense and thereby to become an obstruction to efficient judicial administration." (*Id*. at p. 689.)

Here, as we have noted, the trial judge, on the Berger plaintiffs' motion and after a contested hearing, imposed a receivership on PCF. As the Berger plaintiffs point out, their receivership motion was based in large part on PCF's control over NFL and, in particular, on NFL's apparent violation of the notice of levy the Berger plaintiffs attempted to serve on NFL. Like the order imposing the receivership, resolution of NFL's liability with respect to the notice of levy and the validity of that service will depend on consideration of the relationship between PCF and NFL, Harkey's control over both entities and NFL's failure to honor the notice of levy. Thus, as in *McClenny*, the issues presented in the current motions are "'matters *necessarily relevant and material to the issues involved in the* [original] *action*.'" (See *McClenny*, *supra*, 60 Cal.2d at p. 684.) Moreover, as Harkey's own statements with respect to his control over both PCF and NFL indicate, there is an identity of interest among the parties in both proceedings. Given these circumstances, the current motions are a continuation of the receivership proceedings where factual determinations were made and any right to file a section 170.6 challenge was lost. (§ 170.6, subd. (a)(2).)

The proceedings here are in marked contrast to those considered in *NutraGenetics, LLC v. Superior Court* (2009) 179 Cal.App.4th 243, 254-257 and *Pickett v. Superior*

22

*Court* (2012) 203 Cal.App.4th 887, 894, upon which NFL relies.  In both *NutraGenetics* and *Pickett*, section 170.6 challenges were permitted in the second of two separate independent actions, even though the parties and issues in both actions were the same or similar.  In distinguishing *Jacobs* and *McClenny*, the court in *NutraGenetics* emphasized that "the continuation rule applies in cases in which the second action arises out of, or is a later stage of, the original action." (*NutraGenetics*, at p. 257.)  The court in *Pickett* adopted this limitation on the continuation doctrine.  (*Pickett*, at pp. 893-894.)  Here, of course, that limitation does not prevent application of the continuation of proceedings doctrine: the motion to impose liability grows out of the service of the notice of levy, which in turn gave rise to the contested receivership proceeding.

DISPOSITION

The petition is denied.  The Berger plaintiffs to recover their costs.  The July 19, 2013 order staying all proceedings in the trial court is vacated.

BENKE, J.

WE CONCUR:

McCONNELL, P. J.

McINTYRE, J.