22 Cal.Rptr.3d 885 (2005)
34 Cal.4th 1025
103 P.3d 283
The HOME INSURANCE COMPANY, Petitioner,
v.
The SUPERIOR COURT of Los Angeles County, Respondent;
Montrose Chemical Corporation of California, Real Party in Interest.
No. S110328.
Supreme Court of California.
January 13, 2005.
Charlston, Revich, Chamberlin & Williams, Charlston, Revich & Chamberlin, Stephen P. Soskin and Timothy F. Rivers, Los Angeles, for Petitioner.
No appearance for Respondent.
Latham & Watkins, David L. Mulliken, San Diego, Charles S. Treat, San Francisco, Diana Strauss Casey and Marc D. Halpern, San Diego, for Real Party in Interest.
Heller, Ehrman, White & McAuliffe, David B. Goodwin; Munger, Tolles & Olson, Cary B. Lerman, Paul J. Watford, Los Angeles, and Anne M. Voigts, San Francisco, for Kelly-Moore Paint Company, Inc. and Bayer CropScience Inc., as Amici Curiae on behalf of Real Party in Interest.
*886 GEORGE, C.J.
After federal and state authorities brought several actions against real party in interest Montrose Chemical Corporation of California (Montrose Chemical), seeking recovery for environmental damage allegedly caused by its operations at several sites, Montrose Chemical filed a lawsuit seeking declaratory relief against its primary insurance carriers to establish their duties to defend or indemnify pursuant to the operative commercial general liability policies. One of the defendant primary insurance carriers invoked Code of Civil Procedure section 170.6, permitting the exercise of one challenge against the assigned trial judge by each "side" in the litigation, and the case was reassigned to a new trial judge.[1] Eventually, the parties entered into settlement agreements, and the primary insurance carrier defendants were dismissed from the action.
Montrose Chemical amended its complaint to name as a defendant its "excess" insurance carrier, The Home Insurance Company (Home Insurance), which also invoked section 170.6 in attempting to exercise a challenge against the trial judge. After objection by Montrose Chemical to this attempted challenge, the trial judge *887 ordered it stricken on the ground that the interests of Home Insurance were aligned with those of the primary insurers, and that therefore Home Insurance must be regarded as on the "same side" in the litigation as the party that previously had exercised the sole challenge available to that side under the statute. In subsequently granting a petition of Home Insurance for a writ of mandate, however, the Court of Appeal determined that "more often than not" primary and excess insurance carriers have "substantially adverse interests" requiring that they be regarded as on different "sides," and that therefore Home Insurance was entitled to exercise a separate challenge.
We granted review to decide whether, in a single action brought by the insured against both its primary and excess insurers, the interests of the two types of insurers must be deemed "substantially adverse," relegating them to different "sides" in the litigation and entitling an after-named excess insurance carrier to the exercise of a separate challenge pursuant to section 170.6, despite the previous exercise of such a challenge by a primary insurance carrier.[2] As we shall explain, we conclude that primary and excess insurance carriers do not necessarily have "substantially adverse interests," and that the trial judge, having determined that Home Insurance had not established that defendants' interests were substantially adverse, did not err in striking the challenge of Home Insurance. Accordingly, we reverse the judgment rendered by the Court of Appeal.

I
Commencing in 1983, the federal government and the State of California brought a series of actions against Montrose Chemical seeking recovery for environmental damage allegedly caused by its operations at various sites. In 1990, following the filing of the second action against it, Montrose Chemical brought an action naming as defendants its primary insurers and seeking declaratory relief with regard to defense or indemnification under the operative commercial general liability policies. (Montrose Chemical Company of California v. Canadian Universal Insurance Company, Inc., et al. *888 [now Certain Underwriters at Lloyd's, et al.] (Sup.Ct. L.A. County, No. BC 005158)); see also (Montrose Chemical Corp. v. Superior Court (1993) 6 Cal.4th 287, 24 Cal.Rptr.2d 467, 861 P.2d 1153). In that year, a defendant primary insurer exercised a challenge pursuant to section 170.6 against the trial judge (Judge G. Keith Wisot) then presiding. Following assignment of a succession of judges, in 1993 Judge Joseph R. Kalin was assigned to the case for all purposes. Over the greater part of the next decade, Montrose Chemical reached settlements with defendant primary insurers, who subsequently were dismissed from the action.
In 2001, Montrose Chemical filed a second amended complaint naming as a defendant Home Insurance, an insurer providing coverage of liability in excess of the maximum coverage for liability provided by the policies of the primary insurers. In 2002, after filing its answer to Montrose Chemical's third amended complaint, Home Insurance attempted to exercise, pursuant to section 170.6, a challenge against Judge Kalin. Montrose Chemical filed an objection to the challenge on the ground that the defense side previously had exercised the sole challenge authorized by that statute.
Judge Kalin held a hearing and found that both the primary and the excess insurers had taken the position that Montrose Chemical is not entitled to defense or indemnification under the terms of the policies, that the issues  in particular, that of the obligation to indemnify Montrose Chemical  had been before the court for a number of years, that the pleadings of Home Insurance "somewhat mirror[ed] the pleadings of other insurance companies in [the] case," and that, as between Home Insurance and the primary insurers that previously had settled with Montrose Chemical, no claims existed relating to exhaustion of policy limits or other issues. Based upon those findings, Judge Kalin determined that the interests of Home Insurance, as an excess insurer, were not substantially adverse to those of the primary insurers. Having found the insurers to be on the same side, the judge ordered stricken the section 170.6 challenge filed by Home Insurance.
Home Insurance filed a petition for writ of mandate in the Court of Appeal, seeking to have the appellate court direct the trial judge to grant the carrier's motion to exercise a separate section 170.6 challenge. The appellate court concluded that as an excess insurer, Home Insurance was entitled to exercise a separate challenge because, as a general matter, the interests of defendant primary and excess insurers are substantially adverse, and that to require a trial court to make a factual determination on the issue of conflict of interest would unduly burden that court with the responsibility of deciding the merits of the case. The Court of Appeal granted the petition and issued the requested writ of mandate. We granted review on petition of real party in interest Montrose Chemical.

II
The right to exercise a so-called peremptory challenge against a judge is a creation of statute  it did not exist in the common law predating enactment of section 170.6. (Pappa v. Superior Court (1960) 54 Cal.2d 350, 354, 5 Cal.Rptr. 703, 353 P.2d 311 (Pappa); see McClenny v. Superior Court (1964) 60 Cal.2d 677, 685-686, 36 Cal.Rptr. 459, 388 P.2d 691 & fn. 16 (McClenny); Johnson v. Superior Court (1958) 50 Cal.2d 693, 696-697, 329 P.2d 5 (Johnson).)[3] The statute applies *889 equally in civil and criminal matters. (Jimenez, supra, 28 Cal.4th 798, 805-806, 123 Cal.Rptr.2d 31, 50 P.3d 743; Pappa, supra, 54 Cal.2d at pp. 353-354, 5 Cal. Rptr. 703, 353 P.2d 311; see People v. Superior Court (Lavi), supra, 4 Cal.4th 1164 at pp. 1170, 1184, 17 Cal.Rptr.2d 815, 847 P.2d 1031.)
As relevant to our discussion, section 170.6 provides that no superior court judge shall try any civil or criminal action involving a contested issue of law or fact when it is established that the judge is prejudiced against any party or attorney appearing in the action. (Subd. (a)(1).) Prejudice may be established by the party or attorney "by an oral or written motion without notice supported by affidavit or declaration under penalty of perjury or an oral statement under oath" that the judge is prejudiced against the party or attorney "so that the party or attorney cannot or believes that he or she cannot have a fair and impartial trial" before the judge. (Subd. (a)(2).) The most significant provision related to the issue before us states: "Except as provided in this section, no party or attorney shall be permitted to make more than one such motion in any one action or special proceeding pursuant to this section; and in actions or special proceedings where there may be more than one plaintiff or similar party or more than one defendant or similar party appearing in the action or special proceeding, only one motion for each side may be made in any one action or special proceeding." (Subd. (a)(3), italics added.)
Section 170.6 permits a party to obtain the disqualification of a judge for prejudice, based solely upon a sworn statement, without being required to establish prejudice as a matter of fact to the satisfaction of the court. (Pappa, supra, 54 Cal.2d at p. 353, 5 Cal.Rptr. 703, 353 P.2d 311; Johnson, supra, 50 Cal.2d at p. 697, 329 P.2d 5; Grant v. Superior Court (2001) 90 Cal.App.4th 518, 523-524, 108 Cal.Rptr.2d 825; Barrett v. Superior Court (1999) 77 Cal.App.4th 1, 4, 91 Cal. Rptr.2d 116.) When a party timely files, in proper form, a motion to disqualify a judge based upon this provision, the trial court is bound to accept the disqualification without further inquiry. (Jimenez, supra, 28 Cal.4th at p. 806, 123 Cal.Rptr.2d 31, 50 P.3d 743; Solberg v. Superior Court (1977) 19 Cal.3d 182, 187, 137 Cal.Rptr. 460, 561 P.2d 1148 (Solberg); Barrett v. Superior Court, supra, 77 Cal.App.4th at pp. 4-5, 91 Cal.Rptr.2d 116; Avital v. Superior Court (1981) 114 Cal.App.3d 297, 300, 170 Cal. Rptr. 588 (Avital).)
At the same time, section 170.6 is designed to prevent abuse by parties that merely seek to delay a trial or obtain a more favorable judicial forum. (Peracchi v. Superior Court (2003) 30 Cal.4th 1245, 1252-1253, 135 Cal.Rptr.2d 639, 70 P.3d 1054 (Peracchi); Jimenez, supra, 28 Cal.4th at pp. 807-808, 123 Cal.Rptr.2d 31, 50 P.3d 743; Solberg, supra, 19 Cal.3d at pp. 197-198, 137 Cal.Rptr. 460, 561 P.2d 1148; People v. Escobedo (1973) 35 Cal. App.3d 32, 40, fn. 6, 110 Cal.Rptr. 550.) An important element of that design is the limitation, in any one action, of each party *890 to a single motion, or each side to a single motion, should there be more than one plaintiff or defendant. (§ 170.6, subd. (a)(3).) The phrase "only one motion for each side" contemplates that one side may consist of several parties, and a peremptory challenge by any party disqualifies the judge on behalf of all parties on that side. (Pappa, supra, 54 Cal.2d at pp. 353-354, 5 Cal.Rptr. 703, 353 P.2d 311.) This limitation also reflects the general aim of the legislation to strike a balance between the needs of litigants and the operating efficiency of the courts. (People v. Escobedo, supra, 35 Cal.App.3d at p. 40, 110 Cal. Rptr. 550.)
To effectuate the Legislatures intent, our courts "have been vigilant to enforce the statutory restrictions on the number and timing of motions permitted." (Solberg, supra, 19 Cal.3d at p. 197, 137 Cal. Rptr. 460, 561 P.2d 1148; Jimenez, supra, 28 Cal.4th at p. 806, 123 Cal.Rptr.2d 31, 50 P.3d 743.)[4] We have not permitted "`a device intended for spare and protective use to be converted into a weapon of offense and thereby to become an obstruction to efficient judicial administration.'" (Peracchi, supra, 30 Cal.4th at p. 1253, 135 Cal.Rptr.2d 639, 70 P.3d 1054; Louisiana-Pacific Corp. v. Philo Lumber Co. (1985) 163 Cal.App.3d 1212, 1221, 210 Cal.Rptr. 368; see Jimenez, supra, 28 Cal.4th at pp. 808-809, 123 Cal.Rptr.2d 31, 50 P.3d 743.)
Consistent with this legislative aim, when a party among several on the same side has disqualified a trial judge pursuant to section 170.6 and subsequently is dismissed from the action, the disqualification is not thereby annulled  the remaining parties on the same side are not entitled to a new peremptory challenge. (Louisiana-Pacific Corp. v. Philo Lumber Co., supra, 163 Cal.App.3d at p. 1219, 210 Cal.Rptr. 368; Wegner et al., Cal. Practice Guide: Civil Trials and Evidence, supra, ¶ 3:188, p. 3-46.) Similarly, when a party on the same side has exercised its right to disqualify a judge, a late-appearing party "has no right to challenge the then-current judge[,] because that side has used its one challenge." (School Dist. of Okaloosa County v. Superior Court (1997) 58 Cal. App.4th 1126, 1135, 68 Cal.Rptr.2d 612.) Conversely, when parties on the same side *891 have waived or have not exercised their right to a peremptory challenge of the judge, a late-appearing party on that side may exercise such a challenge. (Id. at p. 1135, 68 Cal.Rptr.2d 612; Wegner et al., supra, ¶ 3:186, p. 3-46.)
This court long has recognized that, in certain circumstances, section 170.6 authorizes the exercise of a peremptory challenge by more than a single plaintiff or defendant. Following enactment in 1957 of section 170.6, which at that time applied solely in civil actions, we considered its constitutionality in Johnson, supra, 50 Cal.2d 693, 329 P.2d 5, involving a malpractice action. We held that, by imposing a limit of one disqualification "per side" in an action, section 170.6 does not deny equal protection of the laws by discriminating against multiple parties. (Johnson, at p. 700, 329 P.2d 5.) We reasoned that a party, although joined with other parties, may be considered to be on a different side within the meaning of the statute when the joined parties have interests that are "substantially adverse." (Ibid.) We provided, as such an example, a situation in which two drivers whose vehicles collide and injure the plaintiff are jointly named as defendants. (Id. at p. 700, 329 P.2d 5; Wegner et al., Cal. Practice Guide: Civil Trials and Evidence, supra, ¶ 3:189, pp. 3-46, 3-47.)
Following amendment in 1959 of section 170.6 to include criminal actions, in Pappa we considered the standard announced in Johnson in a criminal case in which the codefendants Finch and Pappa were charged with murder. Finch disqualified the judge pursuant to section 170.6. Following a mistrial, Pappa was denied her peremptory challenge of the judge assigned to retry the case, and sought a writ of prohibition to preclude the challenged judge from presiding. (Pappa, supra, 54 Cal.2d at pp. 352-353, 5 Cal.Rptr. 703, 353 P.2d 311.)
The majority held that, in order to carry out the legislative intent "to minimize abuses of the privilege," the party seeking to exercise a subsequent peremptory challenge has the burden of establishing that his or her interests are substantially adverse to those of the codefendant. (Pappa, supra, 54 Cal.2d at p. 354, 5 Cal.Rptr. 703, 353 P.2d 311.) The majority added: "If for some reason a party does not desire to assume the burden of establishing that he comes within these conditions, he may pursue the alternative procedure under section 170 of alleging and proving the facts upon which he relies to establish prejudice." (Ibid.)
The majority determined that Pappa's attempt to establish a conflict of interest  relying on the prosecutions theory, revealed at the original trial, that Finch was the principal and Pappa was an aider and abettor, as well as the trial courts denial of Pappas motion for a separate trial and Pappas opposition to Finchs motion for a change of venue  was "very meager." (Pappa, supra, 54 Cal.2d at p. 354, 5 Cal. Rptr. 703, 353 P.2d 311.) The majority observed that Pappa was not claiming that each of the defendants was attempting to avoid conviction by shifting responsibility for the homicide to the other; rather, Finchs defense against the charge that he acted as the principal likely would support Pappas defense against the charge of aiding and abetting. (Id. at pp. 354-355, 5 Cal.Rptr. 703, 353 P.2d 311.) "Although differences of opinion between codefendants as to procedural matters such as the desirability of a change of venue or a separate trial might, under some circumstances, show the existence of substantially adverse interests, it should not be assumed that this is true in the absence of a showing of what the circumstances are and how they affect each of the parties and the relationship between them." (Id. at p. 355, *892 5 Cal.Rptr. 703, 353 P.2d 311.) The majority went on to reject the dissents view that the record was sufficient to establish a possibility that the interests of the parties were substantially adverse and justified a subsequent peremptory challenge. (Id. at pp. 355-356, 5 Cal.Rptr. 703, 353 P.2d 311; see id., at pp. 361-362, 5 Cal.Rptr. 703, 353 P.2d 311 (dis. opn. of Peters, J.).)
Subsequent civil and criminal decisions have adhered to the evidentiary standard enunciated in Pappa. These cases uniformly have recognized that the party seeking a subsequent disqualification of the trial judge has the burden of demonstrating that its interests are substantially adverse to those of a coparty that previously exercised a peremptory challenge  substantially adverse interests are not presumed.
For example, in Avital, supra, 114 Cal. App.3d 297, 170 Cal.Rptr. 588, the codefendants Zakaria and Avital jointly were charged with multiple homicides. After Zakaria peremptorily challenged the trial judge originally assigned, Avital filed a peremptory challenge against the judge who replaced him, supported by the declaration of Avitals attorney that Avital maintained his own innocence "as opposed to that of his codefendant Joseph Zakaria," had entered into an agreement with the district attorney to testify against Zakaria, and could furnish particulars in an in camera hearing. (Id. at pp. 299-300, 170 Cal. Rptr. 588.) In reversing the trial courts denial of the second peremptory challenge, the Court of Appeal concluded that Avital had satisfied his evidentiary burden, observing that his strategy of avoiding conviction by shifting responsibility to Zakaria was "a classic example of the substantially adverse interest" described in Pappa. (Avital, supra, 114 Cal.App.3d at p. 302, 170 Cal.Rptr. 588; see, e.g., People v. Eaker (1980) 100 Cal.App.3d 1007, 1016-1017, 161 Cal.Rptr. 417 [the defendant was not entitled to a second peremptory challenge against the judge after a codefendants attorney challenged the previously assigned judge and the defendant failed to demonstrate his interests were substantially adverse to those of the codefendant]; Welch v. Superior Court (1974) 41 Cal.App.3d 50, 52, 115 Cal.Rptr. 729 [the defendants attorneys declaration speculating how the coparties adverse interests might arise, rather than how they had arisen, was insufficient to support subsequent disqualification of the trial judge]; People v. Escobedo, supra, 35 Cal.App.3d 32, 41, 110 Cal.Rptr. 550 [a defendant was not entitled to peremptorily challenge the hearing judge after the codefendant exercised such a challenge, where the codefendants did not have a conflict of interest in seeking to suppress evidence obtained in the search of the codefendants premises]; see also Sunkyong Trading (H.K.) Ltd. v. Superior Court (1992) 9 Cal.App.4th 282, 289-290, 11 Cal.Rptr.2d 504, fn. 4 [party not entitled to severance of cross-complaint in order to enable it to avoid burden of establishing interests substantially adverse to another party that had exercised an earlier peremptory challenge in the proceeding].)
In the present case, the Court of Appeal held that Home Insurance was entitled to exercise a subsequent peremptory challenge because "more often than not," the interests of primary insurers and excess insurers are substantially adverse to one another. The appellate court reasoned that, because liability under the policy of an excess insurer is not triggered until the claimed losses exceed the limits of the primary insurance policy, the primary and excess insurers will attempt to "foist liability" upon one another whenever both are named as defendants.
The Court of Appeal also reasoned that, in view of the nature both of the relationship *893 between primary and excess insurers and their relationship to the related litigation, a trial judge required to review evidence in support of a claim that such coparties' interests are substantially adverse would be obligated to "review a truckload of pleadings and other documents" and decide the merits of the lawsuit. The court held that, in itself, "the ineluctable tension between primary and excess carriers sued in the same lawsuit is sufficient to show substantial adversity and to create two defense sides within the meaning of section 170.6." Observing that Home Insurance was named as a defendant long after commencement of the action, the court also suggested that currently the action "amounts to an entirely new action against a new party."
We do not agree with the appellate court's reasoning. As Montrose Chemical and amicus curiae have pointed out, a particular insurance carrier does not necessarily provide only one type of coverage, and an insured may have both a primary and an excess insurance policy issued by the same insurance carrier. Such an insurer will have little motivation to "foist liability" upon itself. In the underlying action, for example, Travelers Insurance Co. apparently provided Montrose Chemical with both primary and excess insurance coverage.
Moreover, even when an insured has primary and excess insurance coverage with separate insurance carriers, the interests of such insurers are not inherently substantially adverse. Both types of insurers may take the position, as they did in the present case, that the policies in question afforded no coverage. The excess insurer may assert against the insured, as Home Insurance did in the present case, that it is not liable because the coverage afforded by the primary insurer has not been exhausted  a position that is not equivalent to the position that the primary insurer is solely liable and the excess insurer is not at all liable. The question whether a primary insurer and an excess insurer are on the same side for purposes of section 170.6 is a factual one, as is the situation with regard to other types of parties to litigation.
Nor does the circumstance that the plaintiff belatedly names a party as a defendant establish that that party's interests are substantially adverse to earlier named defendants. (School Dist. of Okaloosa County v. Superior Court, supra, 58 Cal.App.4th 1126, 1134-1135, 68 Cal. Rptr.2d 612 [one side previously having peremptorily challenged the judge, a late-appearing party on the same side did not have a right to a separate peremptory challenge]; cf. Industrial Indemnity Co. v. Superior Court (1989) 214 Cal.App.3d 259, 264, 262 Cal.Rptr. 544 [upholding Judicial Council rule limiting to 20 days the right of "add-on" parties in coordinated cases to exercise a § 170.6 challenge, and observing that such a challenge is particularly subject to abuse in "add-on" cases because, due to the trial judge's lengthy participation in a coordinated case, the nature and extent of his or her rulings is well known  presenting an "unusual opportunity" to challenge for reasons unrelated to bias or prejudice].)
Although the Court of Appeal suggested that, in addition, the third amended complaint "amount[ed] to an entirely new action," the trial court did not make such a determination. Rather, the trial court implicitly determined, in granting leave to amend the complaint, that Montrose Chemical had alleged claims that were substantially related to the subject matter of the existing action. (See Pasadena Hospital Assn., Ltd. v. Superior Court (1988) 204 Cal.App.3d 1031, 1036-1037, 251 Cal.Rptr. 686; accord, Congleton v. Nat'l *894 Union Fire Ins. Co. (1987) 189 Cal.App.3d 51, 62, 234 Cal.Rptr. 218 [ruling of trial court granting or denying leave to amend pleading is entitled to deference].)
Finally, we do not agree that requiring an excess insurer to make a showing establishing substantially adverse interests would impose an undue burden upon trial courts in determining whether the interests of primary and excess insurers are substantially adverse. As the majority explained in Pappa, supra, 54 Cal.2d 350, 5 Cal.Rptr. 703, 353 P.2d 311, a party that seeks to exercise a subsequent peremptory challenge on the ground that, in effect, it is on a different side from another party despite appearances to the contrary, is required to provide evidence of a conflict to enable the trial court to decide whether the interests of the joined parties are actually substantially adverse. (Id. at pp. 354-355, 5 Cal.Rptr. 703, 353 P.2d 311.)
In the present case, Home Insurance attempted to demonstrate to the trial court that its interests as an excess insurer were significantly opposed to those of the primary insurers. The trial court appeared to have little difficulty in determining that the interests of coparties were not substantially adverse, and on that basis denying a second peremptory challenge. The mere likelihood of, or potential for, a conflict between the primary and excess insurers did not and could not establish, in lieu of a factually sufficient demonstration of substantially adverse interests, that these coparties were on different sides within the meaning of section 170.6.

III
The judgment of the Court of Appeal is reversed.
WE CONCUR: KENNARD, BAXTER, WERDEGAR, BROWN, MORENO, JJ., and TURNER, J.[**]
NOTES
[1] All further statutory references are to the Code of Civil Procedure.
[2] Following our grant of Montrose Chemical's petition for review and the completion of the parties' briefing on the merits, Home Insurance notified us that it had entered "rehabilitation" proceedings in its domiciliary state of New Hampshire. In light of a 90-day stay order issued in those proceedings, Home Insurance requested that we temporarily stay proceedings on review. Subsequently, Home Insurance notified us that it had entered into liquidation proceedings. Upon our request for an update and explanation of the effect of these developments upon our grant of review, Home Insurance reported that it remained in liquidation proceedings. In light of an order entered in the New Hampshire proceedings abating any and all proceedings against Home Insurance and enjoining any person from commencing or continuing any proceeding against it, Home Insurance requested, based upon insurance law, comity, and judicial economy, that we both "dismiss or stay" review and order the trial court to "dismiss or stay" the underlying action against it. Because of the changing nature of both the New Hampshire proceedings and the related requests filed with this court, this matter has presented a "moving target," delaying our resolution of the issue upon which we granted review, pending clarification of the insolvency status of Home Insurance and review of these additional requests.

This court is not required, nor is it persuaded, by the language or existence of the New Hampshire order, or the policies cited by Home Insurance, to dismiss or stay review of the procedural question before us, or to order the trial court to dismiss the underlying action. We deny the request to dismiss or stay review, deny as moot the preceding request for a temporary stay, and deny the request to dismiss or stay the underlying action against Home Insurance, without prejudice to its filing a motion to dismiss in the trial court.
[3] As we stated in People v. Superior Court (Lavi) (1993) 4 Cal.4th 1164, 1170, footnote 1, 17 Cal.Rptr.2d 815, 847 P.2d 1031, motions to disqualify made pursuant to section 170.6 usually are referred to as "peremptory challenges," despite the circumstance that, unlike a true peremptory challenge, the movant is required to declare under penalty of perjury or orally state under oath that there is prejudice on the part of the judge. No factual showing or allegation is required in support of that conclusory declaration, and in People v. Superior Court (Jimenez) (2002) 28 Cal.4th 798, 806, 123 Cal.Rptr.2d 31, 50 P.3d 743 (Jimenez) we observed that a challenge under the statute frequently, and properly, is referred to as a "peremptory challenge."
[4] To that end, we have interpreted the phrase "any one action" to encompass several stages of the same proceeding. In general, a party that has disqualified a judge pursuant to section 170.6 may not exercise a challenge against the substituted judge either during the trial or in any later proceeding that is a "continuation" of the original proceeding. (See Solberg, supra, 19 Cal.3d at p. 190, fn. 6, 137 Cal.Rptr. 460, 561 P.2d 1148; Pappa, supra, 54 Cal.2d at p. 353, 5 Cal.Rptr. 703, 353 P.2d 311 [limitation of one motion "in any one action" under § 170.6, former subd. (3) barred a second motion on retrial following a mistrial]; Le Louis v. Superior Court (1989) 209 Cal.App.3d 669, 678-679, 682-683, 257 Cal.Rptr. 458; City of Hanford v. Superior Court (1989) 208 Cal.App.3d 580, 589-590, 256 Cal.Rptr. 274; Wegner et al., Cal. Practice Guide: Civil Trials and Evidence (The Rutter Group 2003) ¶ 3:168, p. 3-40; see also Solberg, supra, 19 Cal.3d at pp. 197-198, 137 Cal.Rptr. 460, 561 P.2d 1148 [noting requirement that the motion be filed before "trial of the cause has ... commenced" under § 170.6, former subd. (2) prohibits a party from making a motion for the first time in post-trial matters, such as hearings on orders to modify (Jacobs v. Superior Court (1959) 53 Cal.2d 187, 190, 1 Cal.Rptr. 9, 347 P.2d 9) or enforce (McClenny, supra, 60 Cal.2d 677, 687-689, 36 Cal.Rptr. 459, 388 P.2d 691) the original judgment, that essentially are a continuation of the main proceeding]; cf. Peracchi, supra, 30 Cal.4th at pp. 1255-1258, 135 Cal.Rptr.2d 639, 70 P.3d 1054 [remand for resentencing following appeal did not afford the defendant a "new trial" within the meaning of 1985 amendment to § 170.6, former subd. (2), permitting an additional peremptory challenge following reversal on appeal when trial judge in the prior proceeding is assigned to conduct a new trial].)
[**] Honorable Paul Turner, Presiding Justice, Court of Appeal, Second Appellate District, Division 5, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.