Filed 6/27/19

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Petitioner, | E072283 |
| v. | (Super.Ct.No. FMB19000094) |
| THE SUPERIOR COURT OF SAN BERNARDINO COUNTY, | OPINION |
| Respondent; | |
| WILLIAM ENRIQUE OLIVO, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDING; petition for writ of mandate. Rodney A. Cortez and Joel S. Agron, Judges. Petition granted.

Jason Anderson, District Attorney and Brent J. Schultze, Deputy District Attorney, for Petitioner.

Steven Parnell Weaver and Michael Milligan, Deputy Public Defenders, for Real Party in Interest.

1

The People seek a writ of mandate commanding the trial court to honor the affidavit of prejudice (peremptory challenge) they filed against the trial court judge, Joel S. Agron, under Code of Civil Procedure section 170.6 (Section 170.6).  The underlying case is a murder prosecution which the People dismissed and refiled the same day along with the peremptory challenge.

Respondent, the Superior Court of San Bernardino County, refused to honor the peremptory challenge, deeming it untimely.  Relying on *Birts v. Superior Court* (2018) 22 Cal.App.5th 53 (*Birts*), the court concluded the People were engaged in prosecutorial "gamesmanship" and attempting to "forum shop[]," and held the second complaint was a continuation of the prior case, not a new case, making the peremptory challenge untimely.

The People argue the case falls under *Paredes v. Superior Court* (1999) 77 Cal.App.4th 24 (*Paredes*), which recognizes that when a criminal case is dismissed and refiled it is a new case for purposes of Section 170.6.  They argue *Birts* does not apply because they weren't attempting to avoid a ruling of the trial court.  We agree and therefore will direct the trial court to honor the peremptory challenge.

# I

# FACTS

A. *The Incident*

According to the People's trial brief, this case arises from a violent outburst by real party in interest, William Olivo.[1]

The People say Olivo attended a Super Bowl party on February 4, 2018 with B.K. and her boyfriend D.C., among others, at a residence in Twentynine Palms. All three stayed overnight. Early the following morning, D.C. left for work. B.K. woke later, found herself alone with Olivo, and started cleaning the apartment. Apparently she upset Olivo when she threw away a nearly empty bag of candy. She apologized and removed the candy from the trash, but Olivo remained aggravated. He said, "[You're] not my girlfriend. I don't have to put up with [your] shit. I will kill you." B.K. was frightened and fled to a bathroom, where she locked herself in. As she left, Olivo said, "Don't even think about calling the cops, I'll kill you."

B.K. perceived Olivo to be a threat and called D.C. to help her get out of the apartment. D.C. returned to the apartment with his roommate, J.T. When they arrived, they found Olivo on the couch in the living room. They ignored him and located B.K. D.C. then went to speak to Olivo, while J.T. and B.K. were in the adjoining kitchen. D.C. said, "What was going on here?" Olivo became defensive and yelled loudly that they needed to leave. Olivo stood up from the couch and moved close to D.C., yelling at

---

[1] We issued an order to show cause and granted Olivo permission to file a formal return within 25 days. He elected not to do so.

him. Though D.C. attempted to defuse the situation, Olivo charged, grabbed D.C. at the waist and pushed him against a wall.

B.K. and J.T. moved away when Olivo attacked D.C. They then heard D.C. scream, "I've been stabbed!" J.T. ran to the living room and found D.C. on his back with Olivo on top of him. He pulled Olivo off, whereupon Olivo turned on him brandishing a knife in a threatening manner. J.T. identified the knife as the murder weapon at the preliminary hearing. J.T. eventually got Olivo to leave and returned to help his friend, who lay in a pool of blood.

When San Bernardino County Sheriff's deputies arrived at the scene, they found Olivo pacing outside the apartment. He had blood on his clothing and held the bloody knife, which he refused to relinquish. After a lengthy standoff, the deputies took Olivo into custody. D.C. died of multiple sharp-force injuries.

B. *Lower Court Proceedings*

On February 7, 2018, the San Bernardino District Attorney's Office charged Olivo with the murder of D.C. (Pen. Code, § 187, subd. (a), unlabeled statutory citations refer to this code), and the personal use of a deadly and dangerous weapon (§ 12022, subd. (b)(1)), issuing criminal threats against B.K. (§ 422), dissuading a witness (B.K.) from reporting a crime against her (§ 136.1, subd. (b)(1)), and assault with a deadly weapon against J.T. (§ 245, subd. (a)(1)). Judge Rodney A. Cortez arraigned Olivo in case Number FMB 18000079 on February 7, 2018.

4

After some delay related to doubt about Olivo's mental health (see § 1368, subd. (c)), Judge Agron held Olivo to answer for the murder, criminal threats, and assault with a deadly weapon counts, but not the witness dissuasion count. Nevertheless, the People filed an information charging Olivo with all four counts. Olivo sought to dismiss all the counts under section 995. On November 7, 2018, Judge Cortez denied Olivo's motion to dismiss as to the murder, criminal threats, and assault with a deadly weapon counts, but granted it as to the witness dissuasion count. The People then filed a first amended information, containing only the three surviving charges, and Judge Agron arraigned Olivo on November 16, 2018.

On November 30, 2018, the parties announced they were ready for trial. The People filed their trial brief on December 3, 2018. However, Olivo subsequently asked for several continuances, which the trial court granted. Meanwhile, Olivo sought to exclude his statements he had made to police on the ground they had been obtained improperly.

That motion was still pending when the People moved to dismiss the case on March 5, 2019. They said they weren't prepared to go forward with trial at that time, and announced they would refile. They filed a new complaint the same day (case No. FMB19000094), charging Olivo with the same four felonies originally filed in the first case and a new misdemeanor count based on Olivo's alleged battery of Z.J. (§§ 242, 243). They also filed a peremptory challenge against Judge Agron in the new case. Olivo filed his own peremptory challenge against Judge Cortez.

5

Judge Cortez arraigned Olivo on the new complaint, then turned to the peremptory challenges. He denied the People's peremptory challenge on the ground it was untimely. He accused the district attorney's office of gamesmanship. The court noted Judge Agron had been assigned the case "since its inception," and had issued rulings unfavorable to the People. Judge Cortez concluded "this is purely—what the *Birts* case is talking about is prosecutorial gamesmanship in order to gain an upper hand and forum shop." Judge Cortez didn't rule on the peremptory challenge filed by defendant and assigned the matter for all purposes to Judge Agron.

## II

## ANALYSIS

The People argue the trial court erred in concluding their Section 170.6 peremptory challenge was untimely.

"The determination of the question of the disqualification of a judge is not an appealable order and may be reviewed only by a writ of mandate from the appropriate court of appeal sought only by the parties to the proceeding." (Code Civ. Proc., § 170.3, subd. (d); *Zilog, Inc. v. Superior Court* (2001) 86 Cal.App.4th 1309, 1314-1315.) Where the underlying material facts are not in dispute, we review the trial court's order denying a peremptory challenge de novo. (*Swift v. Superior Court* (2009) 172 Cal.App.4th 878, 882; *Ziesmer v. Superior Court* (2003) 107 Cal.App.4th 360, 363 (*Ziesmer*) ["In deciding a section 170.6 motion, the trial court has no discretion" so it is "appropriate to review a

decision granting or denying a peremptory challenge under section 170.6 as [a question] of law" under a "de novo standard"].)

"Section 170.6 permits a party to obtain the disqualification of a judge for prejudice, upon a sworn statement, without being required to establish [prejudice] as a fact to the satisfaction of a judicial body." (*Barrett v. Superior Court* (1999) 77 Cal.App.4th 1, 4.) "Where a disqualification motion is timely filed and in proper form, the trial court is bound to accept it without further inquiry." (*Ibid.*) Disqualification is required "even if the court suspects that the party has abused its right to utilize section 170.6." (*La Seigneurie U.S. Holdings, Inc. v. Superior Court* (1994) 29 Cal.App.4th 1500, 1505.)

"As a general rule, a challenge of a judge is permitted under section 170.6 any time before the commencement of a trial or hearing." (*People v. Superior Court (Lavi)* (1993) 4 Cal.4th 1164, 1171.) There are three exceptions to the general rule, including the "all-purpose assignment" rule under which a party must bring a motion for peremptory challenge within 10 days after notice a case has been assigned to a judge for all purposes. (*Id.* at p. 1172.)

The question in this case is whether the People initiated a new case by dismissing case Number FMB 18000079 and filing case Number FMB19000094. If they did, then the peremptory challenge was timely under both the general rule and under the all-purpose assignment rule. The People filed their motion requesting disqualification the same day they filed the second case. Thus, they made their request before the

7

commencement of trial and before the new case had been assigned to any judge for all purposes. Since the trial court has no discretion whether to grant a timely motion, the trial court should have granted the motion as a matter of law.

On the other hand, if the new case was really a continuation of the prior case, the peremptory challenge was not timely under the all-purpose assignment rule. The first case was assigned to Judge Agron for all purposes on October 16, 2018. The People brought their peremptory challenge the same day they filed the second case, March 5, 2019. Thus, if there was only a single case, the peremptory challenge occurred after the all-purposes assignment, and was for that reason untimely.

How do we decide whether there was one case or two? We look to the statutes and case law, which make it clear the dismissal terminated the first case and the new filing started a second.

As the Second District, Division One explained, it is important to strictly enforce the statutes concerning the termination of criminal cases. "Penal Code section 1382, subdivision (a)(2), gives the defendant in a felony case the right to be brought to trial within 60 days of his arraignment in superior court . . . Unless salvaged by circumstances supporting the application of an exception, the rule is that a prosecution twice terminated pursuant to Penal Code section 1382 is barred and cannot be refiled." (*Paredes*, *supra*, 77 Cal.App.4th at p. 35.) "To prevent the mischief that would otherwise result, a 'termination' pursuant to Penal Code section 1382 must be treated as a termination, not as a nit to be picked only when it serves the convenience of the prosecutor or the

8

court . . . [Holding otherwise] would, in effect, . . . create[] yet another judicial exception to the rules adopted by the Legislature when it enacted and subsequently amended sections 1382 and 1387.  That is not our role." (*Ibid.*)

We agree with the Second District that rather than conjure exceptions, we must follow the plain meaning of the statutes governing the termination of prosecutions. "Penal Code section 1382 commands that, absent good cause to do otherwise, the court 'shall order the action to be dismissed' when it is not brought to trial within the required time.  Penal Code section 1384, by its mandate to discharge the defendant from custody if the judge directs dismissal of the action, tells us this dismissal is real.  Penal Code section 1387 provides that an 'order terminating an action' pursuant to these statutes is a bar to any other prosecution under the circumstances described.  Penal Code section 1387.2 tells us that, '[u]pon the express consent of both the people and the defendant, in lieu of issuing an order terminating an action the court may proceed on the existing accusatory pleading,' in which event a new time period commences.  In our view, a finding that the refiled case was but a continuation of the terminated case would be tantamount to a somewhat oxymoronic 'compelled express consent' under Penal Code section 1387.2. . . . [T]here would have been no need . . . to enact Penal Code section 1387.2 if a refiled case could be treated as a continuation of a dismissed case." (*Paredes*, *supra*, 77 Cal.App.4th at pp. 35-36.)

Like many courts before us, we conclude the reasoning of *Paredes* is persuasive and see no need to depart from it.  (E.g., *Ziesmer*, *supra*, 107 Cal.App.4th 360; *People v.*

9

*Mason* (2006) 140 Cal.App.4th 1190, 1198.)  When the trial court dismissed case Number FMB18000079, that terminated the case for all purposes.  When the People filed a complaint in case Number FMB19000094, that began a second case.  It follows that the People's simultaneously filed peremptory challenge was timely, and the trial court was required to grant it.

The trial court reached the contrary conclusion by following the recent decision of *Birts*, *supra*, 22 Cal.App.5th 53.  There, the First District, Division Three applied the "continuation rule" it found in civil disqualification cases to identify an exception to the termination rule.  (See *NutraGenetics, LLC v. Superior Court* (2009) 179 Cal.App.4th 243 [unpaid wages and fraud lawsuit]; *Pickett v. Superior Court* (2012) 203 Cal.App.4th 887 [class action under the Private Attorney Generals Act].)  The Court of Appeal concluded "*Paredes* and *Ziesmer* do not control in situations where, as here, the second case is virtually identical to the dismissed case and the sole rationale articulated for the dismissal and refiling is to evade the impact of rulings made in the first case." (*Birts*, at p. 59.)

We need not decide whether the "continuation rule" ever applies in criminal cases, where dismissal has significant consequences affecting the rights of the accused.  It doesn't apply in this case.  In *Birts*, "the record discloses the District Attorney's clear and singular intent to evade the effect of Judge Buchwald's evidentiary rulings by dismissing the prior action." (*Birts*, *supra*, 22 Cal.App.5th at p. 60.)  The prosecutor "stated rather openly—that the refiled case involves the same charges as before, and that the decision to

10

dismiss the first case was motivated solely by Judge Buchwald's pretrial rulings." (*Id.* at p. 59.)  Here, the People moved to dismiss on the stated ground that they couldn't bring the case to trial by the deadline.  Thus, we conclude, whatever the merits of applying the continuation rule in the criminal setting, the rule would not apply under the facts of this case.  Accordingly, the peremptory challenge was timely and the trial court should have granted it.

## III

## DISPOSITION

Let a peremptory writ of mandate issue directing the respondent superior court to (1) vacate its order denying the People's peremptory challenge under Section 170.6 and (2) issue a new order granting the peremptory challenge.  The stay we ordered on March 11, 2019 shall be dissolved when our remittitur issues.

Petitioner shall prepare the writ of mandate and have it issued, copies served, and the original filed with the clerk of this court, together with proofs of service on all parties.

CERTIFIED FOR PUBLICATION

SLOUGH
J.

We concur:

McKINSTER
Acting P. J.

CODRINGTON
J.

11